## Fromm v. Frankhouser

*Sam Ferguson Musser*, for plaintiffs.
*Barley, Snyder, Cooper & Barber*, for defendant.

MUELLER, *J.*, October 7, 1977—This case is before the court on defendant Intertherm, Inc.'s motion for summary judgment.

Plaintiffs, Benjamin P. Fromm and Bonnie Ann Fromm who are husband and wife, instituted this action in December of 1976 for the recovery of damages allegedly sustained in a fire which occurred at their residence on January 22, 1976. The complaint alleges that defendants Edwin P. Frankhouser and Florence Frankhouser rented a "domicile or residence (mobile home)" to plaintiffs prior to January 22, 1976. It is further alleged that the residence included a "pot burning heater" manufactured prior to January 1, 1960, by defendant Intertherm, Inc. Martins Plumbing, Heating and Air Conditioning is also named as a defendant in the action.

Plaintiffs aver that the fire which destroyed their residence was caused by the defective condition of the "pot burning heater" or "furnace," that the defendants Edwin P. Frankhouser and Florence Frankhouser were negligent in failing to repair said furnace, that defendant Intertherm, Inc. was negligent in its design and production of this particular furnace, and that defendant Martins Plumbing, Heating and Air Conditioning, which serviced the furnace a number of times prior to January 22, 1976, was negligent in failing to properly and adequately check, service and repair the furnace to see that it functioned safely and properly.

Plaintiffs seek recovery for themselves of damages in excess of $10,000 for the wrongful death of their child, Keesha Ann Fromm, and $5,500 for expenses and losses of personalty incurred in said fire. Plaintiffs seek an additional amount in excess of $10,000 in a survival cause of action as personal representatives of decedent. Defendant Intertherm, Inc. filed an answer to the complaint on April 11, 1977, with new matter which stated that

the residence (mobile home) and furnace in question were purchased in 1959 by defendants Frankhouser, with the furnace included as part of the original equipment of the residence. In addition, the answer stated that in 1959, the Frankhousers removed the wheels from the residence, placed the residence and its self-contained heater on a permanent foundation on their property, and connected said residence to public water, sewer and electric facilities. The residence and its heater remained in the same place until the date of the fire, and during the period from 1959-1976, the Frankhousers rented the residence to a number of tenants while paying real estate taxes on said residence.[1] Defendant Intertherm, Inc.'s new matter contends that the action against Intertherm, Inc. is for an alleged deficiency in the design, planning, supervision or observation of construction or construction of an improvement to real property, and as such is barred by the 12-year statute of limitations established by the Act of December 22, 1965, P.L. 1183, sec. 1, 12 P.S. §65.1. It is this contention which serves as the basis for the motion for summary judgment now before the court.

Pa.R.C.P. 1035(b) states that the court shall enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

---

1. Florence Frankhouser during her deposition on March 16, 1977, stated that her son purchased the residence with the heater in 1959, and the residence was not moved between 1959 and the date of the fire. Defendants Frankhouser purchased the residence (mobile home) from their son in 1961. See oral depositions of Florence Frankhouser and Edwin P. Frankhouser (hereinafter Frankhouser Depositions) at 17-18.

that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly the record must be examined to determine whether genuine issues of material fact remain unresolved between plaintiffs and defendant Intertherm, Inc. in this case.

The Act of December 22, 1965, P.L. 1183, sec. 1, 12 P.S. §65.1, provides: "65.1 Twelve years

"No action (including arbitration proceedings) whether in contract, tort or otherwise, to recover damages:

"(1) For any deficiency in the design, planning, supervision or observation of construction or construction of an *improvement to real property,*

"(2) For injury to property, real or personal, arising out of any such deficiency,

"(3) For injury to the person or for wrongful death arising out of any such deficiency, or

"(4) For contribution or indemnity for damages sustained on account of any injury mentioned in clauses (2) and (3) hereof shall be brought against any person lawfully performing or furnishing the design, planning, supervision or observation of contruction, or construction of such improvement more than twelve years after completion of such an improvement." (Emphasis supplied.)

It is undisputed that the action against defendant Intertherm, Inc. is for a "deficiency in the design, planning, supervision or observation of construction or construction" of the furnace in question, within the meaning of the above act. Plaintiffs' complaint against defendant Intertherm is limited to the design and production of the furnace in question. Nor do plaintiffs challenge the contention that all actions of defendant Intertherm relevant to this

suit took place prior to January 1, 1960, more than 12 years from both the date of the fire and the institution of this action. The disputed issue regarding the applicability of the 12-year statute of limitations is whether the mobile home and its self-contained furnace constitute an "improvement to real property" within the meaning of the statute. In order to grant defendant Intertherm's motion for summary judgment the court must find as a matter of law both that the mobile home in this case was "real property" and that the self-contained furnace constituted an "improvement to real property" within the meaning of the statute.

Although there are no cases deciding the question of whether a mobile home is realty or personalty under the statute of limitations, plaintiffs have cited some tax assessment cases which provide useful guidelines for making such a determination. It is clear that mobile homes, so long as they remain mobile, i.e., equipped with wheels, are personal property: Streyle v. Board of Property Assessment, Appeals and Review, 173 Pa. Superior Ct. 324, 327, 98 A. 2d 410 (1953). It is equally clear that a house trailer that is permanently attached to the land by a three wall addition is subject to assessment as real property: Coyle Assessment, 17 D. & C. 2d 149 (Northampton, 1958). However, the present case falls between these two extremes. In drawing the line between personalty and realty the court must be guided both by the intention of the owner and the method of attachment of the item in question to the real estate. The analysis of the Pennsylvania Supreme Court in 1933 remains valid today in determining this question:

"Chattels used in connection with real estate are of three classes: First, those which are manifestly

furniture, as distinguished from improvements, and not peculiarly fitted to the property with which they are used; these always remain personalty: . . . Second, those which are so annexed to the property that they cannot be removed without material injury to the real estate or to themselves; these are realty, even in the face of an expressed intention that they should be considered personalty: . . . Third, those which, although physically connected with the real estate, are so affixed as to be removable without destroying or materially injuring the chattels themselves, or the property to which they are annexed; these become part of the realty or remain personalty, depending upon the intention of the parties at the time of the annexation; in this class fall such chattels as boilers and machinery affixed for the use of an owner or tenant but readily removable . . . " Clayton v. Lienhard, 312 Pa. 433, 436-37, 167 Atl. 321 (1933).

The mobile home in this case falls into the third category. Although there is some question as to the exact manner of attachment of the mobile home to the land, it is undisputed that the wheels had been removed and the trailer set upon cinder blocks.[2] This fact is sufficient to place the mobile home into

2. Plaintiffs assert that they have not admitted that the mobile home was on a permanent foundation, nor even that it was on cinderblocks. Plaintiffs' answer to request for admissions, paragraph 5. However, plaintiffs have filed no affidavits or other offers of proof to counter the deposition testimony of the Frankhousers offered by the defendant in support of its motion for summary judgment. See Frankhouser Depositions at 12. Pa.R.C.P. 1035(d) dictates that plaintiffs must do more than rely on the pleadings to withstand a motion for summary judgment.

the third category of chattels referred to in the Clayton opinion. Accordingly an inquiry must be made as to the intention of defendants Frankhouser who have owned the residence since 1961.

Plaintiffs refer the court to the case of Hartman v. Fulton County, 24 D. & C. 2d 611 (Fulton, 1960), in which the court, using the same analysis which we are applying here, determined that the trailer in question was not real estate and therefore not subject to tax assessment as such. However, the facts of that case concerning the intention of the parties are clearly distinguishable from the present case. In Hartman the landowner did not own the trailer. The trailer was in his possession for resale under an arrangement whereby he would occupy the trailer pending sale, and upon sale the trailer would be replaced by another: 24 D. & C. 2d at 612. The court concluded that under these facts it was never intended that the trailer should become a part of the realty.

However, the facts in this case overwhelmingly support a finding that defendants Frankhouser intended this mobile home to become part of the realty. The mobile home was situated in the same position on the land from 1959 through the date of the fire in 1976, almost 17 years. During this time there were attachments for water, sewer, electricity, and a telephone. Prior to the time when plaintiffs rented the residence, defendants Frankhouser had leased the residence to a number of other tenants to serve as a domicile. The County of Lancaster had assessed the home as "real estate" for tax purposes since it was placed on the property in 1959, and the undisputed facts in the record show that defendants Frankhouser paid these real estate

taxes.[3] These facts lead to only one reasonable conclusion: that defendants Frankhouser intended that the mobile home in this case be treated as real property. Under these circumstances the court holds as a matter of law that the mobile home constitutes real property for purposes of the statute of limitations relied upon by defendant Intertherm. This conclusion follows the approach outlined by the Supreme Court in Clayton v. Lienhard, supra, and is consistent with the cases cited by plaintiffs including Hartman v. Fulton County, supra: Lantz Appeal, 199 Pa. Superior Ct. 310, 184 A. 2d 127 (1962); and Coyle Assessment, supra.

The same analysis leads the court to conclude that the furnace constituted an "improvement to real property" for purposes of the statute of limitations. The court agrees with plaintiffs that defendant Intertherm's reliance on Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co., 81 Wash. 528, 503 P. 2d 108 (1972), is misplaced, both because the decision is not binding on this court and, more importantly, the facts of that case are clearly distinguishable from the present situation.[4] However, the court believes that the

---

3. Plaintiffs rely upon their answer to request for admission in which they assert they are unable to admit the matter asserted as to the above facts because of lack of knowledge. See answer of plaintiffs request for admissions, paragraphs 4, 6, 7, 8, 13. As already noted, however, plaintiffs' reliance on these pleadings is insufficient to withstand a motion for summary judgment in view of the depositions submitted by defendant Intertherm.

4. In Yakima an entire floor of the building involved was removed, 18,000 feet of pipe were refinished and reinstalled

Pennsylvania cases cited above provide sufficient guidance to decide the question.

Plaintiffs assert in their brief that there is no evidence indicating whether the furnace could be removed with both the furnace and the mobile home remaining intact. While that proposition is correct, it does not decide the question. Under Clayton v. Lienhard, supra, all that need be shown is that there is a physical connection of the chattel to the real estate. Once that is shown the question becomes one of intent. There is sufficient evidence in the record to show that there is some physical connection of the furnace to the mobile home. The Frankhouser depositions, unchallenged by plaintiffs, state that the furnace was located in a closet-type enclosure in the center of the mobile home, and that coal oil was delivered to the furnace by gravity from a tank in the back end of the mobile home. Frankhouser depositions at 18-19. The furnace was included within the mobile home when the mobile home was first purchased and placed on the property in 1959. Similarly when the mobile home was purchased by Mr. and Mrs. Frankhouser from their son in 1961, the furnace was included in the sale. Frankhouser depositions at 17. The only reasonable conclusion from these facts is that the parties intended that the furnace be treated as part of the mobile home. Accordingly, the court holds as a matter of law that the furnace constituted an "improvement to real property" within the meaning of the Act of December 22, 1965.

The court is aware that summary judgment should not be granted except in the "clearest" of

---

and approximately 500 joints were utilized to join the system in a permanent manner: 503 F. 2d 109.

cases: Prince v. Pavoni, 225 Pa. Superior Ct. 286, 302 A. 2d 452 (1973); and that the record must be viewed in the light most favorable to the party opposing the motion: Ritmanich v. Jonnel Enterprises, Inc., 219 Pa. Superior Ct. 198, 280 A. 2d 570 (1971). Nevertheless, the failure of the plaintiffs to file any supporting affidavits or depositions in opposing summary judgment leaves the court little choice in this case. " 'The very mission of the summary judgment procedure is to pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial. [To permit] . . . the pleadings themselves to stand in the way of granting an otherwise justified summary judgment, is incompatible with the basic purpose of the rule. . . . ' " Phaff v. Gerner, 451 Pa. 146, 151, 303 A. 2d 826 (1973). Viewing the evidence, not just the pleadings, in the light most favorable to plaintiffs, the court concludes that there is no genuine issue of *material* fact in this case in this issue. Accordingly the motion for summary judgment submitted by defendant Intertherm, Inc. must be granted.

## ORDER

And now, October 7, 1977, defendant Intertherm, Inc.'s motion for summary judgment is granted.